[No. 15797. Department One. August 3, 1920.]

Manley Smith, *by his Guardian etc., Appellant,* v. Seattle-School District No. 1 *et al., Respondents,* Irene Cross, *Defendant.*[1]

Counties (59)—Representation—Torts of Officers or Agents—School Superintendent as Agent—Liability. A county is not liable under the doctrine of *respondeat superior* for the torts or negligence of the county superintendent, as the relation of principal and agent does not exist, since the officer is elected by the people, his duties prescribed by statute, and not subject to the control of the county in the execution of its governmental powers.

Schools and School Districts (29-1)—Negligence (6)—Dangerous Elevator in School Building—Care as to Employee of Licensee. A school district is not liable for injury suffered by a twelve-year-old boy through the dangerous condition of an elevator used by him while employed by the manager of a lunch room in a high school building during the holding of a teachers' institute in charge of the county superintendent, since the superintendent was a mere licensee under Rem. Code, § 4481, granting permission to use the school room for certain public gatherings; and the boy being an employee of the licensee, was entitled to no greater rights in respect to the condition of the elevator.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 4, 1919, dismissing an action for personal injuries, in sustaining demurrers to the complaint. Affirmed.

[1]Reported in 191 Pac. 858.

*Meyers & Couden* and *Edward H. Wright,* for appellant.

*Henry W. Pennock* and *James R. Gates,* for respondent Seattle School District No. 1.

*Fred C. Brown* and *Wm. Parmerlee,* for respondent King County.

HOLCOMB, C. J.—Plaintiff, a minor, brought this action by his guardian *ad litem* against defendants to recover for personal injuries sustained by him because of the alleged negligence of defendants in the operation of a freight elevator while plaintiff was employed in a lunch room maintained at the Broadway High School Building in Seattle. This appeal is from orders of the trial court sustaining separate demurrers by defendants Seattle School District No. 1 and King county to plaintiff's amended complaint, and dismissing his action upon his refusal to plead further.

The alleged facts may be summarized as follows: Respondent Seattle School District No. 1 had caused a lunch room to be installed in the Broadway high school building, and during regular sessions of the school it was operated for the convenience of teachers and pupils of that school; but on August 28, 1917, at the time of appellant's injury, the lunch room was in operation for the benefit of teachers attending an institute being conducted in the building by the county school superintendent with the permission of respondent Seattle School District No. 1. This lunch room was on the fifth floor of the building, and the electric freight elevator upon which appellant was injured ran between the fifth floor and the basement. On the 28th day of August, 1917, appellant, a boy twelve years of age, was employed by the manager of the lunch room to assist

in kitchen work in connection with the operation of the lunch room, and in the performance of such duties he was directed by the manager to do an errand in the basement. He used the elevator to reach the basement, and in attempting to return the same way, he stepped into the open space between the edge of the elevator and the wall of the shaft and sustained the injuries for which recovery is sought.

The complaint charged that the elevator was negligently maintained, because (1st) there was a space of from four to six inches between the floor of the elevator and the front wall of the elevator shaft with no guard to prevent a person riding on the elevator from stepping therefrom into the open space between the edge of the elevator floor and the wall of the shaft; and because (2nd) no notice was posted in or near the elevator calling attention to its construction or to the fact that its operation by a person of tender years was dangerous and constituted a menace to life and limb. Respondents were charged by the complaint with notice of the alleged dangerous condition of the elevator.

Portions of paragraphs V and VI of the amended complaint read as follows:

"That the said lunch room was constructed and equipped in said high school building for the purpose of furnishing healthful food to the pupils and teachers of said Broadway high school while they are in attendance at the sessions of said school. That said lunch room was not constructed or maintained for profit, but solely for the purpose of contributing to the physical welfare of the pupils in attendance at said school."

"That for the convenience of the teachers and others who were required to attend the session of the said teachers' institute the said county school superintendent made arrangements for the operation of the lunch room and its equipment, which was in said high school building during the period when said institute was in

session. That said lunch room was operated during said period with the knowledge and consent of said school district, by direction of the said county school superintendent of King county, Washington, not for the profit of said county, but solely in connection with the holding of said institute."

The holding of institutes is required by statute (Rem. Code, §§ 4575 to 4583); and the use of "the schoolroom" for certain public gatherings is authorized by Rem. Code, § 4481. So the school district was empowered to permit the county superintendent of schools to conduct a teachers' institute in Broadway high school building. But we do not think authority can be shown for the conducting of this lunch room for the convenience of persons in attendance at the institute. The holding of teachers' institutes is not a county function. That is manifestly a function of the county school superintendent under the statute.

Appellant contends that a municipal corporation, including a county, is impliedly liable under the maxim of *respondeat superior* for the negligence of its servants and agents in the discharge of its purely corporate powers, as distinguished from those of a governmental nature; and that, the fact of agency being established, the liability of the municipality is determined by the rules which govern the relation of master and servant, unless it is expressly exempted by statute from the application of the rule.

But this presupposes that the county superintendent in this case is the agent of the county and that, as such, the county must respond under the maxim of *respondeat superior* for the tort or negligence of the county superintendent. The relation of principal and agent does not exist, however, between a municipality and the agents it appoints or employs in the execution

of its governmental powers; for they are generally considered public agents or agents of the state and not of the corporation. Its officers directly elected by the people are not its agents. An officer whose duties are prescribed by statute, whose authority is not derived from the corporation, and who is not subject to its control, is not its agent for whose negligence it is liable. Shearman & Redfield on the Law of Negligence (6th ed.), vol. 2, § 291; *Northwestern Improvement Co. v. McNeil*, 100 Wash. 22, 170 Pac. 338; *Township of Vigo v. Com'rs Knox County*, 111 Ind. 170, 12 N. E. 305; Dillon on Municipal Corporations (5th ed.), vol. III, § 974; Thompson on Negligence, vol. 5, §§ 5818 and 5822; Dillon on Municipal Corporations (5th ed.), vol. IV, §§ 1640 and 1655.

The county superintendent being, therefore, a public officer, and not a municipal agent or employee, whatever may be his liability in such case as this, the county has no liability under the maxim *respondeat superior*.

As to the school district, a somewhat different question is presented. Appellant admits that, as to the school district, the county superintendent (although appellant contends that it was the county through the county school superintendent) in holding the teachers' institute was the invitee or licensee of the school district and that:

"The owner of premises owes no duty to a mere licensee as to the condition of such premises save that he should not knowingly let him run upon a hidden peril or wantonly or wilfully injure him."

But while admitting this legal proposition, appellant contends that he was not such a mere licensee. Neither the county school superintendent nor the county was in any sense an invitee of the school district, not hav-

ing been solicited nor invited to use the building; but the county school superintendent was, by permission, a mere licensee under the statute (Rem. Code, § 4481). It must be conceded that the appellant was the employee of the licensee, and we are unable to find any principle of law which would put him in a different status, such as that of an invitee of the school district itself, or a servant or employee of the school district, or a person of tender years invited either expressly or tacitly to use a dangerous apparatus, or a child using an attractive nuisance, or a volunteer. He comes within none of these classes. The only class he could possibly be placed under would be that of an agent, servant or employee of the licensee of the school district's premises. That being the case, the duty owed toward him was exactly that owed toward the licensee; and that duty and the rule of liability surrounding same is well established by an almost universal array of authorities. We quote and cite a few.

"The general rule is that the licensee goes upon land at his own risk and must take the premises as he finds them. An open hole which is not concealed otherwise than by the darkness of night is a danger which a licensee must avoid at his peril." *Reardon v. Thompson,* 149 Mass. 267.

"The complaint, at most, shows that appellant was no more than a bare licensee, and in such case respondent owed him no duty, except to avoid wilful wrong and wanton carelessness and neglect." *McConkey v. Oregon R. & Nav. Co.,* 35 Wash. 55, 76 Pac. 526.

"An owner owes to a licensee no duty as to the condition of the premises, except that the owner should not knowingly permit the licensee to run upon hidden dangers, or wilfully cause him harm." *Hanson v. Spokane Valley Land & Water Co.,* 58 Wash. 6, 107 Pac. 863.

"In determining respondent's negligence, we must determine the duty it owed to appellant, since negligence occurs only where there is a breach of legal duty. That duty, in the case of licensees and volunteers, is not to wilfully or wantonly injure. Not failing in this duty, responsibility for appellant's injury cannot be fastened upon respondent." *Shafer v. Tacoma Eastern R. Co.*, 91 Wash. 164, 157 Pac. 485.

See, also, *Kroeger v. Grays Harbor Const. Co.*, 83 Wash. 68, 145 Pac. 63; *Gasch v. Rounds*, 93 Wash. 317, 160 Pac. 962.

"It may be assumed, and the assumption is justified by decided cases, that as to persons standing in certain relations to the defendant, a duty rested upon the company to exercise reasonable care in the maintenance and reparation of the machine, and that a failure to perform it would subject the defendant to liability to persons occupying such special relations, who should sustain injury from the omission. But the plaintiff stood in no such relation to the defendant, as imposed upon it the duty to keep the machine in repair. He was, at the time of the accident, in every legal sense, a stranger to the defendant. . . . But in the case before us, there were no circumstances creating a duty on the part of the defendant to the plaintiff to keep the whimsey in repair, and consequently no obligation to remunerate the latter for his injury. The machine was not intrinsically dangerous; the plaintiff was a mere licensee; . . ." *Larmore v. Crown Point Iron Co.*, 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718.

See, also, *Foster v. Portland Gold Min. Co.*, 114 Fed. 613; *Rhode v. Duff*, 208 Fed. 115; *Weaver v. Carnegie Steel Co.*, 223 Pa. 238, 72 Atl. 552; *Benson v. Baltimore Traction Co.*, 77 Md. 535, 26 Atl. 923; *Muench v. Heinemann*, 119 Wis. 441, 96 N. W. 800.

Such being the case, under the foregoing authorities, the school district cannot be held liable for such alleged conditions of the elevator as furnished to the county school superintendent.

The trial court correctly sustained the demurrers and dismissed the case.

Judgment affirmed.

MITCHELL, PARKER, MACKINTOSH, and MAIN, JJ., concur.